Good morning. May it please the Court, I'm going to try and reserve one or two minutes for a rebuttal. The District Court erred in holding that Title VII's religious organization exemption is a jurisdictional provision that cannot be waived. It is not, and the Salvation Army here waived the defense. The Supreme Court in Arbaugh adopted a bright line rule. A provision is jurisdictional only if Congress clearly states that it is. This Court in Leeson further identified three factors to guide that inquiry. First, did Congress clearly label the provision as jurisdictional? Second, does the statute appear or the provision appear in a jurisdiction-granting provision? And third, is there any other reason that necessitates jurisdictional treatment? Each of these three factors favors a finding that the Title VII's exemption is non-jurisdictional. That's important in this case because contrary to what the District Court held, it means that the exemption can be waived. Here, the Salvation Army waived the defense by failing to raise it in its pleadings, delaying for nearly two years to raise the defense at all. Why were you prejudiced? We think there are two grounds for that. Do you agree that if there's no prejudice, it can be raised even if it wasn't initially timely raised? We agree that's the operative rule in Magana, although I would note, and we do think we were prejudiced, but before getting to those points, I would just say that in Magana, the Court actually reversed on waiver grounds because the District Court failed to conduct any inquiry into whether or not it was prejudicial. So the Court could opt to do that here and remanded the District Court to make that prejudice inquiry. And couldn't we make that prejudice inquiry? Yes. Yes, you could, Your Honor. Because it's not clear exactly to me. I mean, you say it, but as far as I can see, you weren't prejudiced. So we think there are two ways in which Ms. Garcia was prejudiced. The first is that she was denied the ability to take discovery. Well, what discovery was there? You, in your own brief, are arguing the merits. And what you're arguing on the merits is the so-called manner in which the Salvation Army raises funds, and that's all based on public record that we could take judicial notice of. And that she herself, I believe, I'm trying to find it, testified in a way that clearly indicated that this really was a religious society organization, use whatever term you want. Yes, Your Honor. So as to the first part of your question, we think the discovery we would have taken would have been an inquiry into how the Salvation Army generates revenue. But that's all, I thought that's all a public record. Our position is that even on the very limited evidentiary record that this Court has before it, which, as you note, is all public documents, we think there's enough there that you could find a genuine dispute of fact under Spencer that precludes summary judgment. However, we think the record could be much stronger and, in fact, should be much stronger had the district court permitted Ms. Garcia's request to take limited discovery on this precise issue. And the sorts of things we would have sought discovery on was how exactly does the Salvation Army charge for the things that it sells to the public? And that, to us, goes to the core of the Spencer analysis. And that's both the plain letter of the procuring opinion in Spencer, which references whether or not an organization engages primarily or substantially in the sale of goods to the public, but it's also consistent with the concurring opinions by Judges Kleinfeld and Judge O'Scanlan, where the very debate between them is on this question. It's not on whether or not an organization holds itself out as religious. That's relevant, but it's not dispositive. What's really necessary is a limited inquiry into how an organization generates revenue. In the Spencer case, they concluded that, well, World Vision, which was the organization at issue there, that it doesn't sell anything to the public and, therefore, that it can claim the 702 exemption. So you're arguing that if they fundraise by selling, that they're not entitled to a religious – they're not a charity, essentially? I mean, your argument goes broader than the religious exemption. Our argument is that the plain letter of the rule established by this Court in Spencer in the procuring opinion is a four-factor – it provides an analytical framework for this Court to guide its determination on whether an organization is covered. Part of that framework is an inquiry into how an organization funds itself. And where there's a case, as here, or as on the limited evidentiary record appears to be the case here, you have an organization that sells goods in substantial volumes to the public. An inquiry needs to be made into that to make this determination. That didn't happen in this case. The district court didn't even reference Spencer. It didn't engage in any of the factual inquiry into the relevant Spencer facts. And to tie it back to Judge Corman's initial question, that was prejudicial to Ms. Garcia because she was left defending herself at the summary judgment stage without any of that information. All she had was the public record. I do want to spend a little bit of time – – to determine whether or not there was a waiver. The waiver should be – excuse me – whether it should be sufficiently – whether or not the waiver should be excused. Yes, we would – For additional discovery. We would not – we would not object to that – to a remand with, I suppose, I think you're to conduct some limited amount of discovery on particularly this issue. We would not object to that. Again, I will say that we do make the affirmative argument that there is enough in the record as is just based on the public documents that you referenced earlier to show that there is a genuine dispute of material fact under the Spencer framework. And so I think this Court would be well within its authority to conclude that a waiver did occur. And I do think there is a – although we don't resist what you're proposing, we do think there is a risk there that an organization – if the punishment for delaying to raise or the cost of delaying to raise a defense is two years into the litigation, the Court issues an order that now there's some limited discovery, I think you do create – risk creating a situation where an organization has an incentive not to raise it in the pleadings, instead to wait until the summary judgment stage and then raise it there. In fact, what's the incentive? I mean, the judge could have reopened discovery. I have reopened discovery in summary judgment where motions for summary judgment have been made, where I thought there was enough. I don't see – we're using the word waiver in its – I guess in its broader – in an improper way. I understand the word waiver in its technical sense to be knowing and deliberate relinquishment of a right. I don't see that that happened here. I think what happened here was a procedural forfeiture and by simply not raising it. And it's a problem that comes up all the time of the I don't know whether you would suggest that this was a strategic decision. I'm not sure if I would, and I think it's a question better directed at the Salvation Army's counsel. As I agree with you, that this is probably more accurately conceived of as a forfeiture potentially, although we adopted the language that the district court itself used in discussing this question of waiver. I know, but those two terms are often used interchangeably and not always accurately. No dispute for me on that point. I will spend – I see I have a minute left, so I will continue. We'll give you some extra time. Okay, great. I would like to spend just a moment on the – one of the other arguments that we have that we think warrants reversal. And this is in the event that you don't find that the argument was waived, which is that our position is that the religious organization exemption in Title VII does not protect against claims for retaliation and hostile work environment like those at issue in this case. And there's a few grounds for that. First, this Court's decision in Pacific Press, and that's at 676 F. 2nd, 1272, held that the legislative history of the exemption makes clear that it does not cover or protect against claims for retaliation. We think that's consistent with the text and structure of the religious organization exemption. The Supreme Court in Nauzer – Well, just – I mean, isn't it – how do you even get past the first five or so words of the provision? This subchapter in its entirety shall not apply. That encompasses retaliation claims, hasn't it? So, we think that language is caveated by the rest of the phrase with respect to an individual of a particular religion. Right. Go ahead, Your Honor. Go ahead. So, our view is, if you look at the – so, the language you read is limited or constrained by those subsequent clauses. One of those clauses is of a particular religion. Right. And we think that clearly limits the scope of the exemption at a minimum to status-based claims, which are – which are set forth in a separate statutory provision altogether from the retaliation-based claims. Okay. Maybe remind me, what's the basis for the retaliation claim here? So, the basis for the retaliation claim is that she filed – she engaged in protected activity. Which was what? She filed a July 19th written grievance to the Salvation Army complaining of religious discrimination. That was on July 19th, 2013. Ten days later, she began suffering adverse consequences. I guess that's where I just – I'm trying to get this straight. So, the – if the Salvation Army is a religious organization, it could certainly say to your client, hey, you didn't want to attend our church? You're out. And there would be no – it could be demoted, could be, right, demoted. Well – To, like, well, you've had a position in which you have to interact with the public. And we only want people who have that kind of public exposure who are sort of true believers. We're going to, you know, transition you off to this lower-paying job that takes you out of that. It seems to me that would have to be okay if the – if they're covered by the exemption, right? I welcome the opportunity to clarify this point. So, our position is that the exemption, if it applies to an organization, enables that organization to hire or fire an employee, as you say. So, in that circumstance where you have an employee who maybe shared your religion, was a co-religionist when you hired him or her, but subsequently left the religion, the organization could fire that person. We don't challenge that. Okay. On the other end of the spectrum, which is what we think this case is, we don't think that same organization could verbally harass or verbally abuse that same individual to the point of, say, amounting – something that amounts to, like, a constructive discharge. That's the hostile work environment claim. Now, there's a whole area of conduct in the middle that isn't actually directly at issue in this case. So, we don't think the court necessarily has to reach a position on it. We think the better read of the text and structure is that that conduct is not protected. But, again, you don't have to reach it here. In our position – and I think this goes to both the – this actually relates to the hypothetical the Salvation Army puts in its brief. A lot of the conduct it is saying, sort of the parade of horribles that would happen from adopting our construction of the statute, is actually not our position. We're not committed to that. It's really just when conduct rises to the level of a hostile work environment claim where it's severe and pervasive that it becomes a problem. Anything short of that would not necessarily. So, if you fire somebody because they won't join your church, that's okay. But, if you are really mean about it, that's not. If you harass them to the point of stating a hostile work environment claim, that's not permitted. And we think that's actually sensible. Why would they do that if they could just simply fire them? I don't know, Your Honor. Why do they have to harass them for the purpose of making them leave if the decision to fire them is not subject to sanction? I'm not sure, Your Honor, but that's what happened in this case. They could have fired Ms. Garcia when she left the church in December 2011, but they didn't. Instead, her supervisor started a campaign of harassment, as she's alleged. The way I read it, it's no good deed goes unpunished. We resist that characterization of it. We think she stated a viable retaliation hostile work environment claim. So what's the answer to the hypothetical I posed, where the organization demotes the person to a position where they don't have any interaction with the public? Go ahead. We think that falls in that in-between area. Now, it would depend a little bit. Is she being terminated and then being offered a new position? No, no. She's being demoted. Because you want to take the position it only applies to hiring and firing. I just don't see any support for that in the text of the statute. So I'm trying to just gauge, like, where do you get that from? So we get that from two places. So returning back to the text of the statute, we think that of the particular religion calls out just those status-based offenses. Then the question becomes, is it the entirety of those status-based offenses or some subset thereof? My hypothetical, the sole basis for the demotion is you have stopped attending our church, and we only want true believers to have interactions with the public. You have to say that that is permissible. I just don't see what your basis for resisting that is. We don't think we will concede that. We will concede that here. But we don't think that undermines or weakens our argument as to this case in any way. Okay. Why don't we hear from your opponent, and we will give you a couple minutes for rebuttal. Thank you very much. Okay. If counsel for the Salvation Army would come forward. Great. May it please the Court. Sean Aller on behalf of the Salvation Army. We believe that Judge Campbell, in granting summary judgment for the Salvation Army, reached the correct conclusion. Can you maybe speak up or raise your? Yes. Reached the correct conclusion that the 702 exemption, the religious organization exemption, was a jurisdictional non-waivable exemption for religious organizations. And there are several bases for doing that. And I can go through those for you. First, the section by its plain language, as you pointed out, applies to religious discrimination and applies to all aspects of religious discrimination and employment by religious employers. This provision, I'm just looking at the text here, I mean it says nothing about jurisdiction, nothing about the power of the court to decide a case. It just basically says the plaintiff doesn't have a cause of action in this set of circumstances. When read in conjunction with the jurisdictional provision of Title VII and the subchapter, which is at 2000E5F3, it says that the district courts of the United States shall have jurisdiction or actions brought under this subchapter. This particular provision under Section 702 specifically says that this subchapter shall not apply to an employer or to a religious organization. It exempts out religious organizations from this subchapter. There cannot be a cause of action brought under this subchapter because of this section in 702. Further, when the Supreme Court sought to amend the jurisdiction of Title VII, it looked to Section 702 to make that amendment. When the Supreme Court? Yes. Say it again. Yes. When the Supreme Court in the Arabian oil case sought to expand the jurisdiction of Title VII to overseas employees, it amended Section 702. The Supreme Court can't amend a statute. I'm sorry. I'm sorry. I'm sorry. The Congress amended Section 702 to expand, to implement, to overrule the Court's decision in Arabian oil. What does that have to do with anything? So when they sought to, when Congress sought to expand the jurisdiction of Title VII, the section that they amended was Section 702 to effectuate that purpose. Do you object to a remand? We do. Why? There's no purpose for it. No, there's no purpose for it if you prevail on your last argument. Well. If we were to disagree with you and say that it's not jurisdictional and that it is waivable, but you could excuse the waiver or procedural forfeiture more accurately if prejudice is shown, how will you hurt? Do you still object? We still do object. Why? So there's several hurdles that Ms. Garcia would have to overcome for a remand to be proper. First, the Court would have to find that this is a non-jurisdictional provision. I just said that, assuming we were to disagree with your argument. And then we get to the waiver argument that you raised earlier and the specific issue. I didn't raise the waiver argument. They raised it. I suggested that there was a way around it if you were not, if they were not prejudiced. And your adversary said, well, we would need, and I asked him how, and he said, well, we would need a little bit more discovery. Judge Campbell correctly found that it would be futile to consider any type of additional discovery because the admissions in the papers and the admissions in the briefing and the admissions in the summary judgment motion and the depositions all indicate that this is clearly a religious organization. But she was never allowed any discovery on that subject, right? So how could, I don't see how there could be a futility determination. I don't even remember that determination in the first place. She wasn't allowed any discovery? On the, whether. . . She had the full ability to conduct any discovery that she wanted, but Judge Campbell. . . But you didn't know that she had to because you didn't raise it. Why didn't you raise it as an affirmative defense? It's not an affirmative defense. No, I understand that. It's a jurisdictional issue. So you say. And because it's a jurisdictional issue, we raised it also in the motion for summary judgment, and at that point there's no prejudice to her. The point of going back. . . I guess, just give us a straight answer, right? I mean, don't be cute. Was it just somebody just dropped the ball on your end, or what happened? Because even if it's jurisdictional, you raise it at the very outset. You don't wait until two years into litigation to spring it on someone. So what's the answer as to why you raised it so late? I don't think it was raised late. You think that when the court doesn't have jurisdiction, you let the litigation proceed for two years, and then you say, Your Honor, we've been wasting your time for two years. Sorry to bother you, but actually you don't have jurisdiction? Come on. Nobody does that. There were other claims in the lawsuit. There was an intentional infliction of emotional distress claim. There was an Americans with Disabilities Act claim. There were other claims in the lawsuit, too. It seemed efficient to raise the entire reason for dismissing all of these claims in a summary judgment motion. Okay. If that's your best answer, so be it. Why don't you move on? All right. Something else. Talking about the second basis for why the breadth of the jurisdictional argument and how this applies, how the religious organization exemption applies, not only to just hiring and firing actions, but applies to all actions. Again, the plain language of the statute says that. It's supported by the cases that have interpreted Rule 702, the Kennedy case out of the Fourth Circuit, the Lone case out of the Southern District of New York, the Sattermeyer case out of the District of Iowa. Those all have found that the 702 exemption applies to all aspects of employment. That is further echoed by the Amos case directed in the Supreme Court in which they were talking about the constitutionality of 702. And to quote the Amos court, they said, quote, Congress acted with a legitimate purpose in expanding the Section 702 exemption to cover all activities of religious employers. I don't think there's any doubt that we can't parse out a retaliation claim or a hostile work environment claim or some other type of claim when we have such broad language not only in the statute itself, but the courts interpreting the statute, including the Supreme Court's interpretation of that statute. Help me with the retaliation claim, because that seems to be, from the plaintiff's standpoint, the strongest. I'm with you on certainly the demotion claim. I just think that's definitely you're okay there. But retaliation claim, help me fit it within the language of the statute here. Well, in the opening brief, Ms. Garcia seemed to distance herself from the fact that the retaliation was based upon her complaints of religious discrimination. She's come back now to that and said it is based on her complaints about religious discrimination in the workplace, and because of that she was retaliated against. Section 702 says this subchapter, this, there's an exemption for anything under the subchapter 703, which is the status-based discrimination he talks about, and then 704, which is the retaliation-based discrimination as well. Well, but I mean, so your opponent focuses on the language employment of individuals of a particular religion, right, and says that retaliation claim is kind of a different species altogether. It's not just saying to someone, unless you're going to, you know, you're not a member of this religion, so therefore you can't do this kind of work. It's some other kind of wrong, right? And if this were a case like Pacific Press, where it was a retaliation claim based on her complaint about gender discrimination, that would be a viable claim. If it was a claim about disability discrimination, retaliation based on disability discrimination, that may be a valuable claim. But when the retaliation claim is based on religion, it implicates those constitutional provisions that Congress sought to protect religious organizations from having to answer in the section of 702 exemption. Okay, so your view is that as long as the person's protected activity is grounded in a complaint about religious discrimination, then the employer is free, basically has a free pass to do whatever it wants to the employee in retaliation for that? That's what the text of the exemption and the Supreme Court analysis would indicate, yes. Finally, I don't And discriminate on the basis of religion if they are a religious organization. Yes, yes. Okay. And then just moving quickly to the Americans with Disabilities Act claim, we think that Judge Campbell also correctly reached the merits and dismissed that claim. Ms. Garcia refused to return back to work. She demanded that she wanted to see a customer complaint about her. We summarized that for her, gave it to her, and without any doctor's recommendation, any doctor's note, or any doctor's authorization, she still refused to come to work. We gave her a personal leave of absence for several months from January until, I think, June. And then at the final end in July, when she didn't return, we terminated her employment. Okay, thank you, counsel. Thank you. Let's give counsel for plaintiff two minutes for rebuttal. Thank you, Your Honors. I'll keep this pretty short, just a few points. On the retaliation point, we think the Supreme Court's decision in Nasr is very clear that retaliation Title VII claims are conduct-based offenses. And if you think about it, you know, someone who merely is a participant or a witness in an ongoing EEOC investigation that does not even share the protected status could file a retaliation claim. So it simply doesn't make sense to think of these as status-based offenses. Second, I think responding to ‑‑I think I gave an unclear answer in response to one of Judge Corman's questions. We would be perfectly ‑‑ It sounded clear to me. Go ahead. Do you want to take it back? No, no. We would be perfectly happy if this Court reversed and remanded with instructions for limited discovery. And third, on the ADA claim, I would just highlight again, which generally rests on the briefing, but otherwise I just want to make clear, there were two reasonable accommodations that were at issue here. It wasn't just asking for a summary and then a copy of the complaint. In January of 2014, February of 2014, and May of 2014, Ms. Garcia wrote to the Salvation Army and said, I can't go back to a workplace with a hostile supervisor. That is a reasonable accommodation, and the Salvation Army never even engaged with it. I was just going to ask, though. But I thought that Ms. Garcia's doctor eventually cleared her with no sort of restrictions, including that one. And at that point, doesn't she either have to come back to work or face termination? I think the district court and the Salvation Army overread that May 5, 2014 doctor's note for two reasons. One, a few days before Ms. Garcia got that note, the Salvation Army was putting pressure on her that saying, if you don't come back to work, we're going to terminate you. So she felt like this was somewhat coercive and got the note and presented it. Second, we think they're overreading it. The note said that Ms. Garcia's current medical condition, the symptoms thereof, had alleviated enough so that she could return to work. What it didn't mean that she could go back to a hostile work environment and have her medical condition not be triggered again. And that's the accommodation she sought. And what's all the more striking is that – Let me refresh my recollection. Didn't an earlier letter from the doctor actually refer to the conditions that she was working under? Yes. One didn't. The last one didn't. Certainly on the last point, this May 5 letter did not. Did not. It did not have any limitations. Earlier ones, I think, did. If I'm – just refresh my recollection. I can't recall offhand, Your Honor. I'd have to go back and look at the record. Unless you have further questions. No. You've exceeded your time. We appreciate your argument. And I can't – tell me how to pronounce your last name again. Goodman. Mr. Goodman, we thank you – on behalf of the Court, let me thank you and your firm for being willing to take on this case. I assume you took it on through a pro bono referral from our court? Yes. Yes, I did. Very grateful for the assistance that you provide in this case. Thank you all.  The case just argued is –
judges: Schroeder, Watford, Korman